Louise F. KOHLER, et al., Appellants,

v.

Fremont FLETCHER, First National
Bank of Minneapolis, Respondents.

No. C6–88–2384.

Court of Appeals of Minnesota.

June 27, 1989.

Review Denied Aug. 25, 1989.

Carol C. Sheppard, Courey, Schwinn & Kodadek, Minneapolis, for appellants.

Eric J. Magnuson, Rider, Bennett, Egan & Arundel, Minneapolis, for Fletcher.

J. Marquis Eastwood, Tracey R. Lindberg, Dorsey & Whitney, Minneapolis, for First Nat. Bank of Minneapolis.

Heard, considered and decided by HUSPENI, P.J., and NIERENGARTEN and CRIPPEN, JJ.

## OPINION

HUSPENI, Judge.

Based on a remainder interest in a trust, appellants Louise F. Kohler and Edward J. Kohler sought tort damages for breach of trustees' fiduciary duty, loss of consortium, and punitive damages assertedly flowing therefrom. The trial court granted summary judgment to respondents Fremont Fletcher and First National Bank based on exclusivity of equitable remedies and on the derivative nature of claims for loss of consortium and punitive damages. We affirm.

## FACTS

Abbott and Louise Fletcher, husband and wife, had three children: Joanne Fletcher Susag, Alfred Fletcher, and respondent Fremont Fletcher. Both Abbott and Fremont practiced estate planning and trust administration law.

In February 1974, Louise and Abbott each created substantial trusts with major provisions that mirrored each other. Each named Fremont Fletcher as the individual trustee and First National Bank of Minneapolis as corporate trustee and provided that the settlor could modify or revoke the trust. The trustees had the right to combine or merge the trusts with any other trust containing the same beneficiaries and substantially identical provisions.

For Louise's benefit and upon his death, Abbott's trust provided for creation of a marital and a residuary trust. Upon Louise's death, the remaining assets were to be held in separate, equal trusts for her children and their spouses. Upon a child's death, the child's surviving spouse would obtain a right in the trust with further rights to surviving issue of the child.

Louise's trust provided that during her life she would be paid the net income and any required principal to equal $600 monthly. She could request in writing additional principal. Upon Louise's death, her trust's assets were to be divided into trusts having similar terms to the children's trusts created from the assets of Abbott's trust.

Abbott Fletcher died in 1976; Louise Fletcher in 1985. They were survived by their three children and a number of grandchildren, including Alfred Fletcher's daughter, appellant Louise F. Kohler.

Between 1956 and 1982, Louise or Abbott gave their children gifts of money. Between 1978 and 1985, a series of payments from the Louise Fletcher Trust to her children and their spouses are characterized as "gifts" by respondents and as "distributions" by appellants. In 1982 and 1984, $33,000 and $50,000, respectively, was transferred from the Abbott Fletcher Marital Trust to the Louise Fletcher Trust. The Marital Trust was then terminated.

Upon Louise's death, her children disclaimed their interests in Abbott's residuary trust causing distribution of its assets to the grandchildren, including Louise F. Kohler.

When Louise F. Kohler asked her father in February 1986 what had happened to the money in the Louise Fletcher Trust, he told her it was none of her business. Louise F. Kohler became estranged from certain family members when she learned of what

she alleges were unauthorized payments from her grandmother's trust to her father, aunt, uncle and their spouses. She sued asserting that because of the wrongful distributions, she has suffered headaches, nausea, diarrhea, loss of sleep and mental distress affecting her marital relationship with her husband, appellant Edward J. Kohler.

Respondents denied acting improperly and petitioned for construction of the trust instruments and instructions as to the propriety of their distributions. Upon consolidation of the two actions, appellants sought partial summary judgment on the breach of fiduciary duty issue. Respondents, asserting exclusivity of equitable remedies, moved for summary judgment on all of appellants' claims. Appellants' motion was denied; respondents' motion was granted.

### ISSUES

1. Did the trial court err in granting respondents summary judgment based on sections 197 and 198 of *Restatement (Second) of Trusts?*

2. Did the trial court err in granting respondents summary judgment on appellants' claim of loss of consortium?

3. Did the trial court err in granting respondents summary judgment on appellants' claim for punitive damages?

### ANALYSIS

■ When reviewing a summary judgment, we consider whether there were genuine issues of material fact and whether the trial court erred in applying the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The evidence is viewed in the light most favorable to the nonmoving party. *See Hauser v. Mealey,* 263 N.W.2d 803, 805 n. 1 (Minn.1978).

■ 1. At issue in this matter is not respondents' alleged breach of fiduciary duties, but the remedy for any breach that might have occurred.

*Restatement (Second) of Trusts* provides:

Except as stated in § 198, the remedies of the beneficiary against the trustee are exclusively equitable.

*Id.* section 197. Regarding the exceptions:

(1) If the trustee is under a duty to pay money immediately and unconditionally to the beneficiary, the beneficiary can maintain an action at law against the trustee to enforce payment.

(2) If the trustee of a chattel is under a duty to transfer it immediately and unconditionally to the beneficiary and in breach of trust fails to transfer it, the beneficiary can maintain an action at law against him.

*Id.* section 198. Minnesota courts have not addressed the applicability and effect of these sections.

Respondents' reliance upon *Dixon v. Northwestern National Bank of Minneapolis,* 297 F.Supp. 485 (D.Minn.1969), is not conclusive. While *Dixon* applied these sections, it did so in a diversity context and the issue was "determined as a matter of *federal law*," not Minnesota law. *Id.* at 487–88 (emphasis added).

*In re Vorpahl,* 695 F.2d 318, 322 n. 6 (8th Cir.1982) and *Kahnke v. Herter,* 579 F.Supp. 1523 (D.Minn.1984) also examined sections 197 or 198. Although federal issues also were involved in *Vorpahl* and *Kahnke* (right to jury trial under federal Employee Retirement Income Security Act of 1974), those cases are not inconsistent with respondents' position. *See also Kaitz v. District Court,* 650 P.2d 553, 554–55 (Colo.1982) (beneficiaries alleged breach of a fiduciary duty and trial court applied sections 197 and 198 to find exclusivity of equitable remedies to resolve issue of right to jury trial).

Also, respondents correctly note that Minnesota courts have applied *Restatement (Second) of Trusts* as authority. *See Matter of Boright,* 377 N.W.2d 9, 12–13 (Minn.1985) (*Restatement (Second) of Trusts* cited to support various rules including situations where no Minnesota case was controlling); *Connecticut General Life Insurance Co. v. First National Bank of Minneapolis,* 262 N.W.2d 403, 405 (Minn.1977) (citing *Restatement (Second)*

*of Trusts* section 330 as authority for the rule that where settlor reserves inter vivos power to revoke trust, he cannot revoke by will); *In re Will of DeReu,* 293 Minn. 132, 137–38, 197 N.W.2d 229, 233 (1972) (citing *Restatement (Second) of Trusts* as supplemental support for Minnesota case law regarding a trust beneficiary's income rights).

We believe that *Restatement (Second) of Trusts* should apply in this case unless there is Minnesota authority indicating to the contrary. *Arnold v. Smith,* 121 Minn. 116, 140 N.W. 748 (1913), cited by appellants, involved complicated facts and imposition of a constructive trust after an estate administrator's personally beneficial acquisition and attempted acquisition of various tracts of land originally belonging to the estate. *Arnold* at 129, 140 N.W. at 753. Appellants rely on the following language:

> "[T]he perpetrator of a tort is responsible for the direct and immediate consequences thereof, whether they be regarded as natural or probable, or whether they might have been contemplated, foreseen, expected or not * * *."

*Arnold* at 134, 140 N.W. at 755 (quoting *Watson v. Rinderknecht,* 82 Minn. 235, 238, 84 N.W. 798, 799 (1901)). This language must be examined in the context in which it appears. *Arnold* invoked a constructive trust regarding land in which the administrator acquired a personal interest. However, the *Arnold* court was concerned with justifying liability for land in which the administrator acquired no personal interest but through his fault had lost the devisee's interest. *Arnold* utilized the elements of fraud to support this latter relief. Regarding imposition of a constructive trust, we note:

> [W]hile fraud may give rise to the establishment of a constructive trust, it is not always essential that fraud be shown before such trust may be impressed upon the property * * *.

*Thompson v. Nesheim,* 280 Minn. 407, 416, 159 N.W.2d 910, 917 (1968).

It is significant that the damages awarded in *Arnold* were the value of the land which had been a part of the deceased's estate. *Arnold* at 134, 136, 140 N.W. at 755, 756. Such a limitation of "tort" damages is more akin to constructive trust relief for the tract in which the administrator had actually acquired an interest than it is to appellants' proposed expansive personal tort liability for alleged emotional distress. Additionally, the issues in *Arnold* arose in the context of a decedent's estate including no formal trust. Unlike the express trust involved here, *Arnold* involved a constructive trust. *Arnold* at 129–30, 140 N.W. at 753; and the *Arnold* "trustee" was but a "constructive" trustee. The supreme court has noted:

> an express trust and a constructive trust are not divisions of the same fundamental concept * * * [but] are distinct concepts.

*Thompson* at 416, 159 N.W.2d at 917 (quoting *Restatement Restitution* § 160, Comment a).

*Arnold* cannot be construed to expand remedies for beneficiaries of express trusts who allege a breach of fiduciary duties. It does not support appellants' assertion that application of *Restatement (Second) of Trusts* is inconsistent with Minnesota law. There is, in fact, no Minnesota case law contrary to sections 197 and 198 of *Restatement (Second) of Trusts.* The trial court did not err in applying those sections to find exclusivity of equitable remedies in this case.

■ Appellants seek relief solely under the theory that breach of a fiduciary duty constitutes an independent tort. Therefore, our determination that only equitable relief may be granted for breach of a fiduciary duty precludes recovery of damages for alleged emotional distress resulting from such breach.

■ Appellants' argument that the distribution to Louise F. Kohler meets the requirements of section 198 of *Restatement (Second) of Trusts* (money payable immediately and unconditionally), must also fail. Section 198 applies to situations where money remains *unpaid* to the beneficiary at the time an action is brought.

No claim was made that any trust money is due but unpaid.

 2. Appellants also contend that the trial court erred in granting summary judgment on the claim for loss of consortium. As a husband's claim for loss of consortium is derivative only, if his wife's underlying tort claim fails, his claim for loss of consortium also fails. *Peters v. Bodin*, 242 Minn. 489, 496, 65 N.W.2d 917, 922 (1954). Therefore, denial of Louise F. Kohler's tort claim for emotional distress precludes Edward J. Kohler's claim for loss of consortium.

 Even if the derivative nature of the consortium claim did not preclude recovery, we find no Minnesota case allowing recovery in the absence of direct physical injury to the spouse in the underlying tort claim. *See Thill v. Modern Erecting Co.*, 284 Minn. 508, 513, 170 N.W.2d 865, 867 (1969).

Appellants cite California law to support their argument that a loss of consortium claim does not require physical injury to the spouse not claiming loss of consortium. However, unlike Minnesota, in California "the cause of action for loss of consortium is not merely derivative or collateral to the spouse's cause of action." *Cole v. Fair Oaks Fire Protection District*, 43 Cal.3d 148, 162, 233 Cal.Rptr. 308, 317, 729 P.2d 743, 752 (1987). Because of this critical difference between the nature of a loss of consortium claim in California and Minnesota, appellants' argument is not persuasive.

 3. Finally, appellants allege trial court error in granting summary judgment on the claim for punitive damages, citing cases which do not involve a trustee's fiduciary duty to a trust beneficiary.

 Generally, in Minnesota, outside a defamation context, punitive damages are permitted only when actual or compensatory damages are also present. *See Jacobs v. Farmland Mutual Insurance Co.*, 377 N.W.2d 441, 446 (Minn.1985) (where plaintiffs sought an equitable remedy of rescission and no actual damages were established, no punitive damages were recoverable). Appellants' primary reliance on *Wilson v. City of Eagan*, 297 N.W.2d 146 (Minn.1980) is misplaced. There, a cat owner recovered punitive damages when, in violation of state law and local ordinance, his pet cat was destroyed by the city without the required five day waiting period. *Wilson* at 150–51. *Wilson* does not address whether punitive damages are available when unaccompanied by actual or compensatory damages. *Jacobs* controls here. The trial court did not err.

## DECISION

*Restatement (Second) of Trusts* sections 197 and 198 apply where a beneficiary of a trust alleges breach of fiduciary duty of the trustee. Under section 197, the beneficiary's remedies are exclusively equitable, subject to the exceptions in section 198 when money or a chattel is immediately owing and payable. The exclusivity of the equitable remedies precludes any claims based on tortious breach of fiduciary duty, loss of consortium, or punitive damages.

Affirmed.